## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH COLEY, | ) | CASE NO. 3:22-CV-01509 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTFORD LIFE AND ACCIDENT | ) | June 27, 2025 |
| INSURANCE COMPANY, | ) | |
| *Defendant.* | ) | |
| | ) | |

## MEMORANDUM OF DECISION
### RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 22, 23]

Kari A. Dooley, United States District Judge:

Plaintiff Joseph Coley ("Plaintiff" or "Coley") pursuant to the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenges the termination of his disability benefits by Defendant Hartford Life and Accident Insurance Company ("Defendant" or "Hartford Life"). Before the Court are Coley's motion for summary judgment and Hartford Life's motion for summary judgment, both of which rely on the administrative record from the ERISA proceedings which resulted in the denial of Plaintiff's continued benefits. The Court has reviewed the parties' submissions, the administrative record, the applicable statutory scheme, and controlling appellate authority on the issues presented. For the reasons that follow, Coley's motion for summary judgment is DENIED, and Hartford Life's motion for summary judgment is GRANTED.

**Factual and Procedural History[1]**

In 2018, Coley worked as a shop fabricator for an employer member of CBIA Service Corporation, and he had worked in that occupation for at least 11 years. Def.'s SMF ¶ 11; Pl.'s

---

[1] The relevant facts are taken from both parties' respective Local Rule 56(a)(1) Statements, Def.'s SMF, ECF No. 22-1; Pl.'s SMF, ECF No. 23-1, from their respective Local Rule 56(a)(2) Counterstatements, Def.'s Counter

SMF ¶ 1; *see* AR 1075 (certificate rider listing CBIA Service Corp. as the policyholder and Commercial Storefront Service as the employer member). CBIA Service Corp. had a group long-term disability ("LTD") plan for its employees which is covered by the provisions of ERISA and insured by Hartford Life (the "Policy"). Pl.'s SMF ¶¶ 2–3. The Policy defines "disabled" as follows:

> **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for 24 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.

Def.'s SMF ¶¶ 3–6.[2] Under the Policy, "Your Occupation" means "Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer or at a specific location." *Id.* ¶ 8. "Any Occupation" is defined as "any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of: 1) the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or 2) the Maximum Monthly Benefit." *Id.* ¶ 7. Lastly, an "Essential Duty" under the Policy is a duty that "1) is substantial, not incidental; 2) is fundamental or inherent to the occupation; and 3) cannot be reasonably omitted or changed. Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty." Pl.'s SMF ¶ 7. The Policy gives Hartford Life "full discretion and authority to determine eligibility for

---

SMF, ECF No. 27-1; Pl.'s Counter SMF, ECF No. 26-1, and lastly, from the joint Administrative Record, which totals almost 2,000 pages, Admin. Rec. ("AR"), ECF No. 21. All of the facts set forth herein are undisputed unless otherwise indicated.

[2] All references to "You" in the language of the Policy refers to the claimant—in this case, Coley. *See* AR 26.

benefits and to construe and interpret all terms and provisions of The Policy" under ERISA.[3]  Def.'s SMF ¶ 10.

Coley has lived with rheumatoid arthritis since at least October 2004.  *Id.* ¶ 12.  He began seeing Dr. Barbara Kage, M.D., a rheumatologist, for his arthritis in October 2017.  Pl.'s Counter SMF ¶ 14.  In early 2018, Coley began experiencing aggravated neck and shoulder pain, for which he sought treatment.  Def.'s SMF ¶¶ 15–16.  He underwent his first spinal surgery—an anterior cervical discectomy and fusion (ACDF) at the C5-C6 and C6-C7 levels—in early 2018, Pl.'s SMF ¶ 16, and because of his limiting pain and recovery from surgery, Coley stopped working on or about March 22, 2018.  *Id.*; Def.'s Counter SMF ¶ 16.  On June 18, 2018, Coley submitted his disability claim to Hartford Life.  Pl.'s Counter SMF ¶ 17.  In support of his claim, Dr. Kage provided an attending physician statement, but did not conduct a functional capacity assessment.  *Id.*  On July 12, 2018, Hartford Life approved Coley's disability claim, finding that he was disabled under the "Your Occupation" category of the Policy.  Def.'s SMF ¶ 18; *see* AR 161–65.  Coley then began receiving LTD benefits from Hartford Life as of June 28, 2018, which lasted 24 months, as provided for in the Policy.  The Policy required Coley to apply for Social Security disability (SSD) benefits, which Coley did.  Pl.'s SMF ¶ 14.  On April 13, 2019, the Social Security Administration (SSA) approved Coley's claim for SSD benefits, finding that he became disabled under the Social Security Act on March 21, 2018.  AR 1560.  Coley thereafter alerted Hartford Life of the SSA's determination.  *See* AR 78.

---

[3] The ERISA notice attached to the Policy identifies Hartford Life as "the claims fiduciary for benefits provided under the Policy," and gives Hartford Life full discretion to determine eligibility and interpret the plan.  AR 35.  But that same notice also identifies CBIA Service Corp. as the "Plan Administrator," and states that "[t]he plan is administered by the Plan Administrator with benefits provided in accordance with the provisions of the applicable group plan."  *Id.* at 35–36.  Both parties refer to Hartford Life in their briefs as the plan administrator.  *See* Def.'s Mem. of Law, ECF No. 22-1, at 1 ("Hartford Life administered the plan . . . ."); Pl.'s Mem. of Law, ECF No. 23-1, at 3 ("A decision by a plan administrator such as HARTFORD . . . .").  Thus, the Court will, for the purposes of these cross-motions, refer to Hartford Life as the Plan Administrator.

While Coley was receiving LTD benefits under the "Your Occupation" category, he was diagnosed with cervical cord compression and underwent his second ACDF surgery in December 2018. Pl.'s SMF ¶ 17. In 2019, Hartford Life began to conduct an inquiry into whether Coley would meet the definition of disabled under the "Any Occupation" category, which, under the Policy, would determine whether Coley would continue to receive benefits after June 28, 2020. Hartford Life sought a functional capacity assessment from Dr. Patrick Senatus, M.D., Coley's treating neurosurgeon, but Dr. Senatus declined to conduct the assessment. Def.'s SMF ¶ 19. Because Hartford Life decided that it was "in need of further clarification of [Coley's] function," *id.* ¶ 20, it ordered an independent medical examination (IME), conducted by Dr. Nauman J. Mufti, M.D., M.P.H., board certified in occupational medicine. *Id.* ¶ 21. Dr. Mufti physically examined Coley, asked him questions about his daily activities, and conducted an independent medical records review of Coley's records going back to 2004. *Id.* ¶¶ 22–25; *see* AR 1153–61. Ultimately, Dr. Mufti concluded that Plaintiff was capable of working eight hours per day, five days per week, with "restrictions on use of both hands for lifting certain weights and pushing/pulling up to 50 lbs." Def.'s SMF ¶ 26. Dr. Mufti also noted certain limitations in kneeling and crouching, and certain restrictions in Coley's range of motion in his left shoulder and neck. *Id.* ¶¶ 26–27. Using Dr. Mufti's conclusions regarding Coley's physical restrictions and limitations, Hartford Life obtained an Employability Analysis Report (EAR), conducted by a certified rehabilitation counselor, to determine the number of jobs available to Coley with his functional capacity, experience, and skills. *Id.* ¶ 32; *see* AR 1100–23. The EAR identified multiple occupations that Coley could perform, including 1 in the "Closest" match category, 9 in the "Good" category, 149 in the "Fair" category, and 828 in the "Potential" category. Def.'s SMF ¶ 33; AR 1105. Relying on Dr. Mufti's IME and conclusions, the EAR, and Coley's collective medical records, Hartford

Life determined on June 12, 2020, that Coley did not meet the Policy's definition of "disabled" under the "Any Occupation" category. Def.'s SMF ¶ 34; *see* AR 89–95. Thus, Coley was not entitled to LTD benefits after June 28, 2020. Def.'s SMF ¶ 34.

Due to the COVID-19 pandemic, Hartford Life tolled its appeal deadline until 60 days after the lifting of the National Emergency declaration. AR 93, 128. During the tolled appeal period, Coley underwent his third surgery (his second for his neck) on November 18, 2020. Pl.'s SMF ¶ 1; Def.'s Counter SMF ¶ 41. Following this surgery, Coley was prescribed Oxycodone for his pain. Pl.'s SMF ¶ 42. He was treated by Brian Pervis, APRN, and Pervis noted that Coley was presenting with 8/10 pain levels in late 2020 and early 2021. *Id.* ¶¶ 44–46. On June 29, 2021, Pervis filled out a functional capacity questionnaire, evaluating Coley's physical impairments and estimating Coley's "functional limitations if [he was] placed in a competitive work situation." Def.'s SMF ¶ 38; AR 937–40. Pervis concluded that Coley had significant limitations and restrictions when sitting, standing, and walking, to the extent that he could do each task no longer than two hours per eight-hour-workday. Pl.'s SMF ¶¶ 51, 53. Pervis also found that Coley's pain levels were significant, which could interfere with an eight-hour workday, and he estimated that Coley could be absent from work due to his impairments more than five days per month. *Id.* ¶¶ 52, 55.

Coley timely appealed Hartford Life's initial LTD decision on July 6, 2021. *Id.* ¶ 22. In his appeal letter, Coley asserted several objections, including that Hartford Life had failed to take into consideration Coley's age and the SSD determination. Def.'s SMF ¶ 37. During the appeal, Hartford Life requested that Dr. Jamie Lewis, M.D., board certified in physical medicine and rehabilitation and pain medicine, conduct an independent medical records evaluation. *Id.* ¶ 40. Dr. Lewis initially reviewed Plaintiff's medical records from January 3, 2018, to June 29, 2021,

and Hartford Life requested that he "provide [his] assessment of restrictions and limitations as of June 28, 2020 through present." *Id.* Dr. Lewis reviewed Coley's treatment records, including those from Dr. Kage, Dr. Senatus, Pervis, and Donna Duffy, PA-C (another treating physician). AR 915–16. Dr. Lewis also reviewed Dr. Mufti's conclusions from his IME of Coley, and the functional capacity questionnaire filled out by Pervis. AR 915–16. Dr. Lewis concluded from the record that Dr. Mufti's analysis of Plaintiff's restrictions and functional capacity—and his conclusion that Coley could work eight hours per day, five days per week, was medically reasonable. Def.'s SMF ¶ 41. Coley provided several additional tranches of medical records over the next several months. *Id.* ¶¶ 44, 47, 51. Dr. Lewis reviewed these additional records and changed some of his recommendations, but did not change his overall conclusion that Coley was capable of working a 40-hour workweek. *Id.* ¶¶ 45, 48–49, 52.

Using Dr. Lewis's limitations and restrictions, Hartford Life generated two additional EARs, which found a substantial number of jobs that would fit Coley's limitations, skills, and experience. *Id.* ¶¶ 46, 50. Finally, on April 13, 2022, Hartford Life issued its final determination on Coley's LTD benefits, upholding the initial determination and concluding that Coley was not "disabled" under the definition of "Any Occupation." *Id.* ¶ 54. Hartford Life summarized the entirety of the record it relied on, including Plaintiff's appeal letter; treatment records from Dr. Kage, Dr. Jay Kimmel (his orthopedic surgeon), and Dr. Senatus; the functional capacity questionnaire from Pervis; the IME conducted by Dr. Mufti; the independent medical records review conducted by Dr. Lewis; the two EARs generated by Hartford; and Plaintiff's award of SSD benefits by the SSA. AR 124–25. Hartford Life explained:

> Following a comprehensive review of the information in the claim file by our Appeal Unit, we are charged with determining if the adverse decision was correct. The adverse decision is that your client did not meet the Policy definition of Disability from Any Occupation beyond June 28, 2020. In determining your

client's claim, we have carefully considered all relevant medical, vocational, and other evidence provided to us. Our review found that your client would be capable of full-time work with the noted restrictions and limitations for the time periods indicated above, and we consulted with a vocational expert to conduct an analysis to determine if appropriate occupations exist in reasonable numbers that are consistent with your client's education, training, and experience. The result of our analysis identified occupations for which your client would be employable. We acknowledge that the medical evidence supports total restriction from November 18, 2020 through January 19, 2021, however your client was not a Full-time Active Employee in an eligible class at the start of the period (November 18, 2020) where total restriction is supported. Therefore, your client is not eligible for benefits during that period of time as he was not covered for LTD benefits. Based on a review of all the medical evidence in your client's file along with the Independent Medical review completed by Dr. Lewis, as well as the Employability Analysis completed by our Vocational Case Manager, we find that your client would not have met the definition of Disability from Any Occupation beyond June 28, 2020.

AR 128–29.

Plaintiff filed the instant Complaint on November 29, 2022. ECF No. 1. Defendant filed an answer on January 31, 2023. ECF No. 14. The parties shortly thereafter each filed their cross-motions for summary judgment on September 25, 2023. ECF Nos. 22, 23. The parties also filed the joint administrative record under seal, ECF No. 21, and the Court granted the accompanying motion to seal, ECF No. 32.

**Standard of Review**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]

**ERISA**

"[ERISA] permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "In 'determining the appropriate standard of review,' a court should be 'guided by principles of trust law'; in doing so, it should analogize a plan administrator to a trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act (*i.e.*, an act in which the administrator owes a special duty of loyalty to the plan beneficiaries)." *Id.* at 111 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111–13 (1989)). Under principles of trust law, a plan administrator's denial of benefits will generally be reviewed *de novo,* unless the plan itself provides otherwise. *Id.* Where the plan documents give the plan administrator discretion to review and to decide benefit claims, a reviewing court will not disturb the plan administrator's decision denying benefits "unless it is arbitrary and capricious." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009). Here, the Plan unambiguously gave Hartford Life, as administrator, "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." Def.'s SMF ¶ 10. As such, the Court's determination turns on whether Hartford Life's determination to discontinue benefits was "arbitrary and capricious." *Hobson*, 574 F.3d at 82. Plaintiff does not argue otherwise. *See* Pl.'s Opp'n, ECF No. 26, at 2.

Under this deferential level of review, a court will overturn an administrator's decision to deny benefits only where the decision "was without reason, unsupported by substantial evidence

---

[4] ERISA appeals are an imperfect fit for summary judgment purposes. Here, neither party asserts that there are genuine issues of material fact in dispute, and both agree that the cross-motions can and should be decided on the Administrative Record. The parties disagree, however, as to whether the Administrative Record reveals error in Hartford Life's denial of benefits.

or erroneous as a matter of law." *Hobson*, 574 F.3d at 83. Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by [the decisionmaker] . . . and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (alterations in original). The scope of review is narrow, and this Court cannot substitute its own judgment for that of the plan administrator. *Hobson*, 574 F.3d at 83–84; *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995). The Court does not determine whether the defendant made the "correct" decision but whether the decision had a reasonable basis in the record. *Hobson*, 574 F.3d at 89.

"ERISA and the Secretary of Labor's regulations under the Act require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials. . . . But these measures do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Although a plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, "courts have no warrant to require [plan] administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834 (footnote omitted); *Hobson*, 574 F.3d at 85. As discussed above, if there is substantial evidence in the record to support the plan administrator's determination, that determination must stand. *Hobson*, 5 74 F.3d at 83–84. This is so even if a contrary determination would also have been supported by substantial evidence. *Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 89 (2d Cir. 2021) (summary order).

**Discussion**

In the April 13, 2022 final determination issued by Hartford Life, it explained that it examined the following pieces of evidence in finding that Plaintiff was not disabled under the Policy for "Any Occupation": Plaintiff's objection to Hartford Life's initial determination; medical records and progress notes from Dr. Kage, Dr. Kimmel, and Dr. Senatus; the FCE from Pervis; the IME conducted by Dr. Mufti; the independent medical records review conducted by Dr. Lewis; the two EARs generated by Hartford Life; and Plaintiff's award of SSD benefits by the SSA. AR 124–25. In reaching its determination, Hartford Life largely relied on the medical records review by Dr. Lewis and the two EARs, as well as the addendums that were generated based on additional medical records provided by Plaintiff. *See* AR 125–28. In seeking summary judgment, Defendant reiterates its reliance on Dr. Lewis's reports and the EARs, and also points to Dr. Mufti's IME, arguing that its decision was supported by substantial evidence. *See* Def.'s Mem. of Law, ECF No. 22-1, at 14, 20; Def.'s Reply, ECF No. 31, at 7–9. Defendant also contends that it was not arbitrary and capricious to afford Pervis's analysis less weight or to deviate from the SSA's determination on whether Plaintiff was disabled under the Social Security Act. *See* Def.'s Mem. of Law, ECF No. 22-1, at 14–16.

In opposition and in his own motion for summary judgment, Plaintiff argues that Defendant's decision was arbitrary and capricious largely on three grounds: (1) Hartford Life improperly did not conduct a Functional Capacity Evaluation (FCE), even after it was recommended by Dr. Mufti; (2) Dr. Lewis's opinions were crafted from cherry-picked portions of the records and are unreliable, and thus, the EARs that were generated using his reports were also unreliable; and (3) Hartford Life improperly ignored the decision of the SSA in awarding Plaintiff SSD benefits. *See* Pl.'s Opp'n, ECF No. 26. Defendant counters that Hartford Life was not

required to conduct an FCE, and indeed, Dr. Mufti's IME served the purpose of evaluating Plaintiff's functionality; that Dr. Lewis's opinions and the resulting EARs were reliable; and that Hartford Life addressed the SSA's determination and adequately explained that they differed because the two definitions of "disability" differ. *See* Def.'s Reply, ECF No. 31.

The Court agrees with the Defendant: although this may be a case where a contrary determination would also be supported by substantial evidence, viewing the record in its totality, there was substantial evidence to support Hartford Life's determination that Plaintiff was not disabled under the "Any Occupation" definition.[5]

---

[5] The Supreme Court, in *Metropolitan Life Insurance Co. v. Glenn*, instructed courts evaluating ERISA claims (whether under a *de novo* or arbitrary and capricious standard of review) to consider, as one of several factors, whether a conflict of interest is present. 554 U.S. 105, 117 (2008). That is, where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," this creates a conflict of interest for the administrator, and the court should take this into account in its review of the administrator's actions. *Alberigo v. Hartford*, 891 F. Supp. 2d 383, 395 (E.D.N.Y. 2012). "A *Glenn* analysis proceeds in two steps. The initial inquiry is simple: whether the plan administrator both evaluates claims for benefits and pays benefits claims. If so, the court goes on to determine how heavily to weight the conflict of interest thus identified, considering such circumstances as whether procedural safeguards are in place that abate the risk, 'perhaps to the vanishing point.'" *Durakovic v. Building Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010) (quoting *Glenn*, 554 U.S. at 117). Of those "subfactors" to consider, the Supreme Court identified "whether the insurance company administrator has a history of biased claims administration," and whether "the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 554 U.S. at 117.

The record submitted to the Court in connection with the parties' cross-motions is largely silent on the *Glenn* analysis. In Plaintiff's Rule 56(a)(1) statement in support of his motion for summary judgment, he submits the undisputed fact that "CBIA [(Plaintiff's employer)] did not pay claims from its assets; instead, HARTFORD paid claims that it decided from its own assets based on the policy it underwrote to fund the plan." Pl.'s SMF ¶ 5. Oddly, in response, Defendant "admits that the Plan is fully insured for LTD benefits" but "denies that the Policy contains a clear delineation concerning funding." Def.'s Counter SMF ¶ 5. However, Defendant does not deny that Hartford Life did pay claims, including Plaintiff's claim, from its own assets. The Court will thus assume that a conflict of interest exists under *Glenn* and will take that into account in evaluating whether Hartford Life's decision was arbitrary and capricious. But neither party has advanced any analysis of, nor does the record provide much insight into, the *Glenn* subfactors. Notwithstanding, the Court will consider the existence of a conflict of interest in reviewing Hartford Life's ultimate determination, to the extent it is able to on this record. *See, e.g., Asberry v. Hartford Life & Accident Ins. Co.*, No. 14-CV-69 (JMF), 2015 WL 857883, at *10 (S.D.N.Y. Feb. 27, 2015) ("Hartford took other steps that courts within this Circuit have recognized as helping to mitigate any conflict of interest, including commissioning [an IME].").

**Dr. Mufti's Independent Medical Examination**

The IME conducted by Dr. Mufti adequately supports Hartford Life's conclusion. Dr. Mufti, board certified in occupational evidence, conducted a physical examination of Plaintiff, a review of his medical records, and, in response to Hartford Life's questions, opined on Plaintiff's functionality. *See* Def.'s SMF ¶¶ 21–22, 25, 28. Dr. Mufti's physical examination revealed that Plaintiff had normal range of motion in his right shoulder, knees, and lumbar spine, with some restricted range of motion in his left shoulder and cervical spine. *Id.* ¶ 27. Plaintiff also self-reported to Dr. Mufti that he had the ability to participate in various physical activities, including walking his dog, playing with his grandkids, helping with household chores, and going to the gym for exercise on a treadmill and stationary bike. *Id.* ¶¶ 23–24. However, Dr. Mufti also noted that Plaintiff did present with pain in his shoulder, knees, and neck. Pl.'s Counter SMF ¶ 22; AR 1154, 1160. Taking into account the physical exam, Plaintiff's self-reported functionality, and Plaintiff's medical records between 2004 to the present, Dr. Mufti concluded that Plaintiff did have rheumatoid arthritis, but that it is being managed well by his doctors, and he "retains adequate range of motion of the neck to carry out most activities, with the exception of work above the shoulder level." Def.'s SMF ¶ 28. Dr. Mufti concluded that Plaintiff was able to work a 40-hour work week, with some restrictions. *Id.*

Plaintiff does not contest Dr. Mufti's findings[6] or credentials, but instead points to a note in his May 20, 2020 addendum, which was made after analyzing additional medical records from

---

[6] Plaintiff argues that Dr. Mufti's opinion about Plaintiff's ability to work 40 hours per week was provided without analysis. Pl.'s Opp'n, ECF No. 26, at 4. But that is an overly narrow reading of his report. Dr. Mufti explained that his physical examination of Plaintiff revealed that he had normal range of motion, other than his left shoulder and neck, that he had an "athletic body with well-developed musculature," that he is able to sit, stand, and walk unrestricted, that he has fair balance, and that he is "fully capable for working with his hands performing coarse and fine movements and making simple and firm grasp." AR 1159–60. In ordering the IME, Hartford Life asked Dr. Mufti to physically examine Plaintiff, assess his functionality, and identify any restrictions or limitations to his functionality. AR 1159–60. Read in its entirety, Dr. Mufti's report provides his reasoning for answering those questions the way that he did.

Dr. Senatus, Plaintiff's neurosurgeon.  *See* Pl.'s Opp'n, ECF No. 26, at 4.  In that addendum, Dr. Mufti stated that his initial opinion remained unchanged, but that he "agree[d] with Dr. Senatus that an FCE may be conducted."  AR 1134.  Plaintiff concedes that an FCE is not required under the law, *see Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 357 (E.D.N.Y. 2013) (collecting cases), but argues that Hartford Life's decision was nevertheless arbitrary and capricious because Dr. Mufti recommended an FCE, and Hartford Life did not follow his recommendation.  Pl.'s Opp'n, ECF No. 26, at 4–6.  This argument fails.  First, Dr. Mufti did not indicate that his opinion was contingent on the outcome of an FCE.  To the contrary, he maintained his prior assessment but recognized that "an FCE *may* be conducted."  AR 1134 (emphasis added). Dr. Mufti's recognition that an FCE *might* be appropriate under the circumstances does not mean that Hartford Life acted arbitrarily and capriciously in deciding not to request an FCE, especially when it had already ordered an IME to assess Plaintiff's functionality.  *See Carroll v. Hartford Life & Accident Ins. Co.*, 937 F. Supp. 2d 247, 272 (D. Conn. 2013) (discussing permissive vs. mandatory language in conducting physical examinations of claimants).

Second, even though an FCE may be the "'gold standard' in quantifying a person's work-related restrictions and limitations," Pl.'s Opp'n, ECF No. 26, at 5 (citing *Shaw v. AT & T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015)), Dr. Mufti's IME served the same purpose of physically examining the claimant and evaluating his functionality.  *See* AR 1159 (requesting that Dr. Mufti "address [Plaintiff's] functional abilities, restrictions and limitations for the following activities," and listing traditional work activities, such as "hours at a time and total hours/workday the claimant can sit, stand, walk").  Indeed, the courts that have criticized a plan administrator's decision not to schedule an FCE did so because the administrator had not conducted either an FCE *or* IME.  *See Chan v. Hartford Life Ins. Co.*, No. 02-CV-2943 (LMM),

2004 WL 2002988, at *9 (S.D.N.Y. Sept. 8, 2004) (finding that plan administrator's failure to order an FCE or IME "call[ed] into question its decision to terminate [the claimant's] benefits"); *Alberigo*, 891 F. Supp. 2d at 399–400 (finding plan administrator's decision to be arbitrary and capricious where it did not order any physical examination and only relied on records review); *Shaw*, 795 F.3d at 550 (same).  Plaintiff does not identify, nor could the Court find, any case(s) in which a plan administrator's decision was overturned for failure to conduct an FCE when the administrator had secured an IME, or vice versa.  *See also Carroll*, 937 F. Supp. 2d at 271–72 (finding plaintiff's contention that Hartford Life's failure to order either an IME or FCE was arbitrary and capricious to be "without significant merit"); *Topalian*, 945 F. Supp 2d at 357 (upholding plan administrator's denial of benefits where Hartford Life did not order an IME or FCE).

In sum, it was not arbitrary and capricious for Hartford Life to rely on Dr. Mufti's IME, and it provides substantial evidence for its decision to terminate Plaintiff's benefits.

**Dr. Lewis's Independent Medical Records Review**

Defendant also relied upon Dr. Lewis's independent medical records review as lending support for Hartford Life's determination.  Dr. Lewis first reviewed Plaintiff's medical records from January 3, 2018 to June 29, 2021, including treatment records from Dr. Kage (Plaintiff's rheumatologist), Dr. Senatus (his neurosurgeon), Pervis and Duffy (both treating providers), and Dr. Mufti's IME. AR 915–16.  Dr. Lewis also reviewed the multiple imaging scans and reports taken of Plaintiff's spine and neck, his physical therapy reports, and the physical residual functional capacity questionnaire completed by Pervis. AR 915–16.  In response to Hartford Life's request that he evaluate Plaintiff's physical restrictions and limitations, Dr. Lewis concluded that Dr. Mufti's analysis of Plaintiff's restrictions and functional capacity was medically reasonable.

Def.'s SMF ¶ 41; AR 921.  Dr. Lewis acknowledged Plaintiff's "cervical fusion, limited left shoulder motion, and high levels of back pain," but pointed to Plaintiff's cervical MRI and his lumbar x-ray, which showed significant flexibility and only "minor degenerative changes."  AR 921.  Dr. Lewis also took into account Plaintiff's subjective complaints of lower back pain, his ability to sit and walk, and his reports of fatigue.  AR 921.  He opined that there is no "clinical correlation" for Plaintiff's reports of fatigue, but recognized his pain levels and acknowledged that it was being managed well by Plaintiff's prescribed Oxycodone, and that Plaintiff did not exhibit any side effects or sedative effects from the medication (which Pervis had noted in his treatment of Plaintiff).  AR 920–21.[7]  In short, Dr. Lewis reviewed the totality of Plaintiff's medical records and his self-reported symptoms and claims, and he determined that although Plaintiff's condition was serious, it was being managed well by his doctors and treatment plan, and with certain functional restrictions, consistent with Dr. Mufti's assessment, Plaintiff could sustain a 40-hour workweek.  AR 922–23.

Plaintiff's counsel thereafter supplemented the medical record three times over the next several months: first, on July 30, 2021, with additional records regarding Plaintiff's treatment between October 2017 and September 2020, Def.'s SMF ¶¶ 44–45; then again in November 2021, with additional treatment records from Dr. Senatus and Dr. Kimmel, Plaintiff's orthopedic surgeon, AR 602–06; and lastly, in March 2022, with new records regarding Plaintiff's left shoulder rotator cuff surgery, AR 546–47.  With each submission, Dr. Lewis reviewed the new medical records and

---

[7] Plaintiff argues that Dr. Lewis ignored Plaintiff's reported pain level of 8/10 and that it was arbitrary and capricious to determine that Plaintiff could work for 8 hours per day without taking into account his pain level.  Pl.'s Opp'n, ECF No. 26, at 11.  However, Dr. Lewis noted that Plaintiff was being treated with Oxycodone for his pain, and that he exhibited no signs of side effects or signs of sedation from the medication.  AR 921.  Hartford Life also credited Plaintiff's treatment with Oxycodone with no side effects in its final determination letter.  AR 125–26.

generated a new report. And as a result, Dr. Lewis amended certain restrictions and limitations,[8] but he did not change his overall conclusion that Plaintiff was capable of working and sustaining a 40-hour workweek.

Plaintiff challenges Hartford Life's reliance on Dr. Lewis's findings (and the EARs that resulted) on two grounds: (1) that Dr. Lewis is an unreliable medical expert and is unqualified to provide these opinions, and (2) that Dr. Lewis cherry-picked the record to support his pre-ordained opinion and ignored Plaintiff's subjective complaints and treating physicians' opinions, mainly Pervis's. Pl.'s Opp'n, ECF No. 26, at 6–7, 10–11. As a preliminary matter, Plaintiff relies on extra-record evidence to support his argument that Dr. Lewis is somehow unreliable or relies on "alternative" medicine. *See id.* at 7 (citing websites allegedly tied to Dr. Lewis's practice). Although the "decision whether to consider evidence from outside the administrative record is within the discretion of the district court . . . . the presumption is that judicial review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *Meidl v. Aetna, Inc.*, 346 F. Supp. 3d 223, 234 (D. Conn. 2018) (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003)). Plaintiff, who offers this "evidence" with neither legal citation nor factual support for a "good cause" finding, has certainly not met this standard. And the import of this evidence, in any event, is utterly speculative. Further, Plaintiff agreed in his Rule 56(a)(2) Counterstatement with Defendant's statement of Dr. Lewis's

---

[8] For instance, as a result of a new MRI of the lumbar spine provided to Dr. Lewis for his second supplemental review, he found that Plaintiff exhibited moderate severe lumbar spinal stenosis and small disc herniation for the period between June 28, 2020, and November 17, 2020. AR 605. Dr. Lewis adjusted the limitations and restrictions for this time period accordingly. AR 605. Similarly, after Plaintiff had cervical spine fusion surgery on November 18, 2020, Dr. Lewis found that he would be unable to perform any work between November 18, 2020, and January 19, 2021. AR 605. After this recovery, due to Plaintiff's reported back pain, his moderate severe lumbar spinal stenosis and small disc herniation, and his recent surgery, Dr. Lewis found that Plaintiff could work 40 hours per week, but with some limitations and restrictions. AR 606. Dr. Lewis also noted that these restrictions should be reassessed in several months to determine how Plaintiff's recovery was progressing, AR 606, which did occur in March 2022, when Dr. Lewis reviewed Plaintiff's post-operative recovery for his left shoulder rotator cuff repair, AR 547.

qualifications as "Board Certified in Physical Medicine and Rehabilitation and Pain Medicine," which undermines the argument that Dr. Lewis is not qualified to review Plaintiff's medical records and provide an informed medical opinion.  Pl.'s Counter SMF ¶ 40.[9]

Plaintiff also argues that Dr. Lewis cherry-picked the record, and that his status as a repeat physician consultant for insurance companies bolsters the argument that his analysis is unreliable.  Pl.'s Opp'n, ECF No. 26, at 7–8.  "The Supreme Court has acknowledged that physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements." *Shaw*, 795 F.3d at 550–51 (quotation omitted).  Thus, Plaintiff is correct that it is appropriate for the Court to consider whether Dr. Lewis's practice of being a retained consultant casts doubt on his independence and reliability.  *See also supra* at n.5.  On the other hand, "[t]he Second Circuit has noted that, 'unlike the [Social Security Administration], ERISA Plan administrators need not give special deference to a claimant's treating physician.'"  *Carroll*, 937 F. Supp. 2d at 274 (quoting *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 442 (2d Cir. 2006)).

In support of his argument, Plaintiff provides citations to cases in which Dr. Lewis's opinions were called into question or otherwise viewed by the court with skepticism.  However, almost all of these cases reviewed an insurer's benefits determination under a *de novo* standard of review, not the deferential standard of arbitrary and capricious.  *See* Pl.'s Opp'n, ECF No. 26, at 7 (collecting these cases).  The only court that reviewed Dr. Lewis's findings under an arbitrary and capricious standard, the Sixth Circuit in *Shaw v. AT & T Umbrella Benefit Plan No. 1*, found that

---

[9] To the extent that Plaintiff argues that Dr. Lewis's expert medical testimony is inadmissible, "Rule 702 [of the Federal Rules of Evidence] and *Daubert* do not apply in ERISA actions" because "[a]n ERISA plan administrator is not a court and is not bound by the rules of evidence."  *VanWright v. First Unum Life Ins. Co.*, 740 F. Supp. 2d 397, 404 (S.D.N.Y. 2010) (quotation omitted).  Hartford Life was not required to satisfy the *Daubert* standard in selecting a medical practitioner to conduct an independent medical records review.

"Dr. Lewis's track record" was one of many factors (none of which were dispositive on their own) to "further support the conclusion that the Plan did not engage in a 'deliberate, principled reasoning process.'" 795 F.3d at 551. The Sixth Circuit found in that case that the plan administrator had failed to order a physical exam (either an IME or FCE) of the claimant, and importantly, that "the Plan's physician advisors simply ignored the [treating physician's evidence] . . . [i]nstead of offering evidence to contradict [the treating physician's] conclusions." *Id.* at 548. That is not the case here. Hartford Life did order a physical examination of the Plaintiff—the IME performed by Dr. Mufti—and Dr. Lewis examined those conclusions in his review, in addition to the entire medical record. Furthermore, Dr. Lewis did not simply ignore Pervis's findings, as the court found in *Shaw*: instead, he agreed with Pervis that some restrictions and limitations were reasonable, but explained in detail why he disagreed with Pervis's ultimate conclusion:

> While it is supported of the claimant to have restrictions and limitations, I do not agree with the report of Brian Pervis, APRN who opines the claimant can sit for 10 minutes before needing to get up, stand for 30 minutes before needing to sit down, walk for 10 minutes, and needs to take breaks every 15 minutes for 30 minutes before returning to work, rarely lifting and carrying less than 10 pounds, rarely looking down, turning head, and hold head in static position, no looking up, occasionally climbing stairs, rarely stooping and crouching, and no twisting or climbing ladders. Physical examinations have been documented as without any degree of focal neurological deficits, while diagnostic testing has not revealed any significant nerve root compression/spinal cord impingement. An MRI was conducted on 05/31/19, showed significantly improve patency of the spinal canal at these levels with only mild residual spinal canal stenosis remaining. Therefore, the provided physical examination and diagnostic findings do not support the level of impairment described by Mr. Pervis.

AR 923. Because of these differences in opinion, Dr. Lewis found that Dr. Mufti's conclusion that Plaintiff could work 40 hours per week was medically reasonable. AR 923. Therefore, in this case, Dr. Lewis and Hartford Life did exactly as the Sixth Circuit had urged in *Shaw*: they acknowledged the treating physician's opinion and evidence and countered with other evidence which they found more compelling. *See Wedge v. Shawmut Design & Constr. Grp. Long Term*

*Disability Ins. Plan*, 23 F. Supp. 3d 320, 342 (S.D.N.Y. 2014) ("As just stated, [the plan administrator] was not required to 'accord special weight to the opinions' of Plaintiff's physicians. The physician it retained . . . reviewed the same data and came to a different—but medically justifiable—conclusion." (quoting *Hobson*, 574 F.3d at 85)).

In short, Dr. Lewis reviewed Plaintiff's medical records, his physical examination by Dr. Mufti, and his self-reported symptoms and claims, and he determined that although Plaintiff's condition was serious, it was being managed well by his doctors and treatment plan, and with certain functional restrictions, Plaintiff could sustain a 40-hour workweek. AR 922–23. That assessment was certainly supported by substantial evidence in the record, and Dr. Lewis's decision to diverge from Plaintiff's treating physician (and Hartford Life's reliance on that decision) was not arbitrary and capricious. *See, e.g.*, *Carroll*, 937 F. Supp. 2d at 274 ("Hartford was not obligated to credit Dr. Norris' opinions as to Carroll's functional abilities (which were founded not on medical examinations but on Carroll's own subjective statements regarding her abilities) over those of the two independent reviewing physicians . . . .").

In rendering its decision, Hartford Life relied on a physical exam conducted by Dr. Mufti, a records review conducted by Dr. Lewis, Plaintiff's treatment reports from multiple treating physicians, his subjective reports of pain, and his imaging scans and records. Hartford Life generated two EARs by experts using the findings from Dr. Mufti's IME and Dr. Lewis's records review. The most recent EAR dated December 2, 2021—generated using Dr. Lewis's recommended restrictions and limitations (which, importantly, encompassed the vast majority of Plaintiff's major surgeries and treatments)—found that in the current job market, "2 [occupations] are at the 'Closest' level; 21 are at the 'Good' level; 274 are at the 'Fair' level[,] and 1425 are at

the 'Potential' level," when taking into account Plaintiff's education, training, and experience.[10] AR 577–78.  Further, the EAR took into account Plaintiff's age: that although he was, at the time, 60 years old, his retirement age was still 67, and thus, he "would still be considered well within the working age range."  AR 126.

The Court concludes that Hartford Life's decision that Plaintiff was not disabled under the category of "Any Occupation" under the Policy was supported by substantial evidence and was not arbitrary or capricious.  *See Asberry*, 2015 WL 857883, at *5 (holding that plan administrator's decision was supported by substantial evidence where one independent reviewer, one vocational analysis, and one medical records review on appeal concluded that claimant was not disabled, even though treating physician disagreed) (collecting cases).

### Social Security Determination

Notwithstanding, Plaintiff also argues that Hartford Life's decision was arbitrary and capricious because the SSA determined that Plaintiff was eligible for disability benefits, and Hartford Life did not adequately explain its contrary determination.  Pl.'s Opp'n, ECF No. 26, at 14–16.  The Second Circuit has encouraged plan administrators and courts to consider a claimant's SSA determination in their ERISA analysis, and, if applicable, to explain why they reached a different conclusion.  *Hobson*, 574 F.3d at 92 ("We encourage plan administrators, in denying benefits claims, to explain their reasons for determining that claimants are not disabled where the SSA arrived at the opposite conclusion.").  However, plan administrators are not *required* to provide such an explanation.  *Richard v. Fleet Fin. Grp. Inc. Ltd. Emp. Benefits Plan*, 367 F. App'x

---

[10] Plaintiff challenges Hartford Life's reliance on the EARs by vaguely citing the concept of "garbage in, garbage out," referring to his objections to Dr. Lewis's reports, which was the basis for the second EAR.  Pl.'s Opp'n, ECF No. 26, at 13.  However, as the Court has already found, Hartford Life was not arbitrary and capricious in relying on Dr. Lewis's records review, and so too were they reasonable in relying on the EAR generated using Dr. Lewis's recommended restrictions.

230, 233 (2d Cir. 2010) (summary order).   Nor are plan administrators bound by the SSA's interpretation of a claimant's medical record, as "the SSA's definition of the term 'disability' is not necessarily coextensive with an ERISA plan's definition of that term."  *Id.* at 91–92; *see Kocsis v. Standard Ins. Co.*, 142 F. Supp. 2d 241, 255 (D. Conn. 2001).   Furthermore, a plan administrator's failure to adequately consider a SSA determination is not, on its own, dispositive of an ERISA challenge.  *See Billinger v. Bell Atl.*, 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003), *aff'd*, 124 F. App'x 669 (2d Cir. 2005); *see also Hobson*, 574 F.3d at 92 (holding that plan administrator's failure to consider the SSA's decision was not arbitrary and capricious, "especially in light of the substantial evidence supporting its determination).

In Hartford Life's final determination on appeal dated April 13, 2022, Hartford Life explained its reason for differing from the SSA:

> Your client may be required to apply for Social Security Disability benefits (SSDI), and we note that your client has been approved for SSDI.  However, it is possible to qualify for SSDI, but no longer continue to qualify for private long-term disability (LTD) benefits from The Hartford.  The standards governing receipt of these public and private benefits are different in critical ways.  In determining entitlement to SSDI, the Social Security Administration (SSA) measures your client's condition against a unique set of federal criteria.  By contrast, the continuing validity of a claim to benefits under a private LTD policy depends in part on the interpretation of the specific terms in the policy.  Therefore, while The Hartford considers the SSA's disability determination as one piece of relevant evidence, the SSA's determination is not conclusive.  Your client's LTD policy is a contract that must be consistently enforced according to its terms.  The following will help to explain why The Hartford reached a different conclusion than the SSA regarding your client's disability benefits.  **In determining your client's claim, we have carefully considered all relevant medical, vocational, and other evidence, including any SSA determinations or materials you have provided to us.  Your client's receipt of benefits from The Hartford is determined under a different definition of Disability than that used by SSA** and as set forth in your client's LTD policy and described in the termination letter.

AR 125 (emphasis added).   Hartford Life correctly observed that under the law, a plan administrator's obligation is to interpret the terms of the Policy and not to apply the federal criteria

under the Social Security Act in doing so. *See Billinger*, 240 F. Supp. 2d at 285 ("Social Security determinations are not binding on ERISA plans, and should not have unintended side effects on such plans not contemplated by the parties in initiating the plans, or by Congress in creating the Social Security disability structure."). Hartford Life also explicitly explained that it considered all "SSA determinations or materials" that Plaintiff provided and that its decision differed from the SSA's because of the findings and evidence cited in the rest of the final determination letter.[11] AR 125. Courts have held that, when evaluating a plan administrator's decision under an arbitrary and capricious standard, no more than this is necessary, especially where there is ample evidence otherwise supporting the administrator's determination. *See Carroll*, 937 F. Supp. 2d at 274–75 ("[T]here is no indication in the record that Hartford failed to consider this award; in fact, Hartford's July 15, 2010 letter notifying Carroll of the denial of her appeal specifically noted that the 'decision to uphold the denial of this claim is based upon [the evidence used in the initial determination of denial], and the following additional information,' including the 'Notice of Approval for Social Security Disability benefits.'" (quoting plan administrator letter)); *Topalian*, 945 F. Supp. 2d at 351 ("Hartford did not ignore the SSA's 2006 disability finding. Rather, Hartford expressly considered the ALJ's disability findings but declined to afford significant

---

[11] Of note, the SSA reviewed Plaintiff's application and awarded him benefits on April 13, 2019, finding that he became disabled on March 21, 2018. AR 1560–66. That determination by the SSA occurred shortly after Plaintiff had his first neck surgery in December 2018. Following the SSA's award, Plaintiff underwent multiple other treatments for his rheumatoid arthritis, including a second neck surgery in November 2020, his prescription of Oxycodone and other new medications, and a surgery to his left shoulder rotator cuff in early 2022. Dr. Mufti also examined Plaintiff for the IME more than an entire year after the SSA's award, and almost 16 months after Plaintiff's first neck surgery. Hartford Life was therefore examining a vastly different record and medical landscape by the time it made its final determination on April 13, 2022, and thus, its decision to minimize the importance of the SSA determination (while still acknowledging it as a relevant factor) was certainly not arbitrary and capricious. *See Hobson*, 574 F.3d at 92 ("[B]etween the time that Hobson submitted the diagnoses upon which the SSA awarded her disability benefits and August 2004, when MetLife sent her its next letter terminating her LTD ERISA benefits, she had undergone surgery for her colitis. MetLife terminated Hobson's benefits on the basis that she had successfully recovered from this surgery; thus, the SSA's determination as to her pre-surgical condition was no longer relevant when Metlife denied her benefits claim.").

weight to those findings . . . ."); *see also Kocsis*, 142 F. Supp. 2d at 255; *Billinger*, 240 F. Supp. 2d at 285–86.

In light of Hartford Life's consideration of the SSA determination, the presence of substantial evidence in the record, and the absence of any other evidence suggesting arbitrariness and capriciousness, the Court finds that Hartford Life's decision was supported by substantial evidence and therefore was not arbitrary and capricious.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 22) is GRANTED in its entirety, and Plaintiff's motion for summary judgment (ECF No. 23) is DENIED in its entirety.  The Clerk of the Court is instructed to enter judgment in favor of the Defendant and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of June, 2025.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE